FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 3 0 2006

LUTHER D. THOMAS, Clerk
By: [signature]
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BRIAN N. WILLIAMS, | :: | CIVIL ACTION NO. |
| Plaintiff, | :: | 1:04-CV-3777-WSD |
| | :: | |
| v. | :: | |
| | :: | |
| MICHELLE MARTIN, Warden, | :: | |
| KATHLEEN KENNEDY, Deputy | :: | |
| Warden, | :: | |
| LT. HATCHER, | :: | PRISONER CIVIL RIGHTS |
| JOHN DOE CORRECTIONS | :: | 42 U.S.C. § 1983 |
| OFFICERS, | :: | |
| Defendants. | :: | |

## OPINION AND ORDER

Now before the Court are Plaintiff's Complaint [Doc. 1]; Defendants'

Motion for Summary Judgment [Doc. 22] (converted from Defendants' Joint

Motion to Dismiss [Doc. 13] per this Court's prior order [Doc. 21]); Plaintiff's

Response in Opposition to Defendants' Motion to Dismiss [Doc. 16][1];

Defendants' Joint Reply thereto [Doc. 18]; Defendants' Joint Supplement in

Support of Their Motion to Dismiss Converted to Motion for Summary Judgment

---

[1] Plaintiff has not filed a response to the Clerk's Notice to Respond to
Summary Judgment Motion [Doc. 23], indicating he does not oppose it. See L.R.
7.1B, N.D. Ga. However, the Court will construe Plaintiff's response to
Defendants' motion to dismiss as the required response to the converted motion
for summary judgment.

[Doc. 27]; Defendants' Certificate of Need to File Discovery [twice docketed as Docs. 28, 29]; Defendants' Joint Motion for Fees and Sanctions [Doc. 31]; Plaintiff's Response to the Motion for Sanctions, with accompanying motion for an extension of time to file same [Docs. 32, 33]; and Defendants' Reply thereto [Doc. 34].

## I. PROCEDURAL BACKGROUND

Plaintiff, who has been represented by counsel throughout these proceedings, filed a 42 U.S.C. § 1983 complaint on December 27, 2004. Plaintiff alleges in his Complaint that, on October 5, 2004, Lt. Hatcher and several unnamed correctional officers, who were members of the C.E.R.T. team at Phillips State Prison (Phillips) in Buford, Georgia, savagely attacked and "beat, kicked, and clubbed [him] multiple times in his face and about his head with metal flashlights, taking turns for over ten minutes while he was lying helpless on the floor." [Doc. 1 ¶¶ 6-10.] Plaintiff alleges that he was treated for severe injuries to his head and face, and "was then taken to solitary confinement lockdown for an indefinite period on the false pretext of attacking an officer." [Id. ¶¶ 11-12.] Plaintiff alleges that the Warden and Deputy Warden at Phillips

2

"condoned and tolerated the violent attack on [him] and attacks on other inmates."
[Id. ¶ 15.]

Plaintiff alleges that Defendants' actions constitute torture within the meaning of 18 U.S.C. § 2340, et seq., that Defendants used excessive force against him in violation of the Constitution and laws of the United States and of the State of Georgia, and that the supervisory Defendants displayed deliberate indifference to the serious risk of harm these officers posed to him and other inmates at Phillips. [Id. ¶¶ 18-22.] Plaintiff seeks compensatory and punitive damages from the Defendants in their individual capacities. [Id. ¶ 24.]

On April 7, 2005, the named Defendants moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted. Defendants asserted that Plaintiff had failed to exhaust his administrative remedies, a prerequisite to any 42 U.S.C. § 1983 prisoner action with respect to prison conditions. [Doc. 13.] Because the parties submitted matters outside of the pleadings in support of, and in opposition to, the motion to dismiss, this Court ordered that the motion to dismiss be converted into a motion for summary judgment. The Court also authorized limited discovery regarding the issue of administrative remedies available to Plaintiff and whether

3

they had been exhausted. [Doc. 21.] Defendants deposed Plaintiff and a copy of the deposition transcript, with exhibits, was filed. [Docs. 28, 30.]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). The moving party bears the initial burden of showing that it is entitled to judgment as a matter of law, Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990), which it may do by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the nonmoving party must then "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in its favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). "[T]he mere existence of *some* alleged

4

factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

247-48 (1986). <u>See also</u> <u>Chanel, Inc. v. Italian Activewear of Florida, Inc.</u>, 931

F.2d 1472, 1477 (11th Cir. 1991) (stating that "[o]nce a moving party has

sufficiently supported its motion for summary judgment, the non-moving party

must come forward with significant, probative evidence demonstrating the

existence of a triable issue of fact").

## III. CONTENTS OF THE PARTIES

### A.   <u>Defendants' motion for summary judgment</u>

Defendants argue that Plaintiff may not sue them based on an alleged

violation of United States Code, Chapter 113C–Torture, 18 U.S.C. § 2340, <u>et seq.</u>,

because nothing "'in [that] chapter [is to] be construed as creating any substantive

or procedural right enforceable by law by any party in any civil proceeding.'"

[Doc. 22 Supp. Br. at 8[2] (quoting 18 U.S.C. § 2340B).] Defendants further note

that Chapter 113C only criminalizes torture when it occurs "'outside the United

---

[2] Although the pages of the supporting brief are not numbered, the citations
to the brief herein indicate the page numbers as if they appeared in the document.

5

States.'" [Id. 7 (quoting 18 U.S.C. § 2340A(a)).] Defendants also argue that

Plaintiff may not raise a claim under the Georgia Constitution because (1) he has

failed to comply with the notice requirements of the Georgia Tort Claims Act, and

(2) they are immune from suit individually under state law for actions taken

within the scope of their official duties. [Id. 10-16.]

Finally, Defendants argue that Plaintiff may not proceed on his federal

claims without first exhausting his administrative remedies, which he has failed to

do. [Id. 16-19.] Defendants note that the Georgia Department of Corrections

(GDOC) has adopted a three-step grievance process for state prisoners: (1) a

written informal grievance, (2) a written formal grievance filed with the Warden

of the facility, and (3) an appeal to the Office of the GDOC Commissioner. [Id.

17 & Ex. A (1st Williams Aff.) ¶¶ 11-15 & attach. at 5-9.] Defendants claim that

Plaintiff failed to avail himself of any one of those steps before filing the instant

lawsuit. [Id. 17 & 1st Williams Aff. ¶ 15.]

**B.     Plaintiff's response to the motion to dismiss (later converted to the instant motion for summary judgment)**

In Plaintiff's Response to Defendants' Joint Motion to Dismiss, he argues

that Defendants' position that torture is only actionable under 18 U.S.C. § 2340,

6

et seq., if it is committed outside the United States is "absurd." [Doc. 16 at 4.]
Plaintiff also asserts that the notice requirement for filing suit in state court based
on a violation of state law is not a bar to a § 1983 suit in federal court. [Id. 7-8.]

Finally, with respect to his alleged failure to exhaust administrative
remedies, Plaintiff presents his own sworn declaration, set forth in a November
23, 2004 letter to Mr. Stokes, one of his attorneys, that he had filed an informal
grievance against Lt. Hatcher and the C.E.R.T. team members on October 7, 2004,
but had not, as of the date of his letter, "heard anything yet" in response. [Id. 9 &
Ex. A (Pl.'s Decl.).] Plaintiff argues that his failure to exhaust administrative
remedies may be excused when he "has filed an informal grievance which [has]
not been processed and his further filing of a formal grievance is prevented by
actions of prison officials because of not processing his informal grievance to
finality." Plaintiff states that when "the grievance procedure inhibits an inmate
from filing a formal grievance, then the formal grievance procedure is not
'available' to the inmate." [Id. 10-11.]

## C.   Defendants' reply and supplement; Plaintiff's deposition testimony

In Defendants' Joint Reply, they state that if Plaintiff had filed an informal
grievance, he would have a receipt for it, and that a receipt has not been produced.

7

[Doc. 18 at 3.] Defendants also argue that if Plaintiff had filed an informal grievance and received no response within ten days, the GDOC grievance procedure allowed him to file a formal grievance. [Id. 3 & Ex. A (2nd Williams Aff.) ¶¶ 4, 7-8 (wherein Ms. Williams states that she served as Plaintiff's inmate counselor at Phillips and saw him at least twice a week, but he never requested either an informal or a formal grievance form from her).] Defendants argue that because Plaintiff did not file a formal grievance, he failed to exhaust his administrative remedies, and he may not proceed with the present lawsuit until he has done so. [Id. 4.]

In Defendants' Joint Supplement in support of their motion for summary judgment,[3] they argue that Plaintiff's testimony reveals that he has "no evidence whatsoever" to support his claim that he filed a grievance regarding the October 5, 2004 incident. [Doc. 27 at 2-3.] At his deposition, Plaintiff stated that he could not recall how many statements he had written regarding the alleged incident, and that he was relying on prison records to determine the statements he

_____

[3] The Supplement was filed after Plaintiff was deposed. Plaintiff's failure to appear at his deposition when it was originally scheduled is the subject of Defendants' Joint Motion for Fees and Sanctions [Doc. 31] discussed later in this opinion.

8

submitted because he had "no independent knowledge of the statements." [Doc. 28 (Pl.'s Dep.) 6-7.] After being shown two witness statements – one dated October 9, 2004, in his own handwriting, another dated October 25, 2004, signed by Plaintiff but apparently written by the prison official investigating the October 4, 2004 incident – Plaintiff stated that he could not remember writing "any other statement on any other type of form." [Id. 7-9 & Exs. 1-2.] Plaintiff later remembered his letter to Mr. Stokes and his reference in it to a grievance he allegedly had filed against Lt. Hatcher on October 7, 2004. Although Plaintiff testified that he had submitted that grievance to Ms. Williams, his prison counselor, he did not recognize either the Informal Grievance Form or the Inmate (Formal) Grievance Form in use at Phillips at the time and did not recall either of the forms as the one he had used[4] to file his grievance. In fact there is no information in the record as to the form of the grievance file, to whom it was submitted, its content or any other specific. The only reference in the record is a single statement made to his lawyer that he "filed a grievance on Hatcher and the C.E.R.T. Team on the 7th." [Doc. 28, Ex. 3]. He did not identify either of the

_____

[4] Defendants state that it is an "undisputed fact" that there were "no other forms" available to inmates at Phillips that Plaintiff could have "submitted as a grievance." [Doc. 27 at 3 & Ex. 1 (3rd Williams Aff.) ¶ 9.]

9

two witnesses' statements as constituting in whole or in part of the "grievance" he filed. [Doc. 28 at 9-12]. [Id. 9-14 & Exs. 3-5.]

Plaintiff testified that he was not aware that a prisoner could appeal a grievance after a certain number of days, as specified in the grievance procedures, despite having received no response to the grievance. [Id. 15-16.] Plaintiff was shown a Diagnostic Orientation Checklist that he had signed on November 5, 2002, at Coastal State Prison, wherein he had acknowledged, inter alia, that "[t]he Grievance Procedure has been explained," and he was also shown an Inmate Orientation Checklist that he had signed on January 6, 2003, apparently at Phillips, wherein he had acknowledged that he had been given a "formal orientation" concerning, inter alia, the "Classification, Disciplinary, and Grievance Process." [Id. 16-22 & Exs. 6-7.] Plaintiff nevertheless denied having acquired any knowledge of the prison grievance procedure from the prison administration, including from his own counselor, Ms. Williams, who, he claimed, "wasn't a good counselor, actually," and he also denied ever having seen a copy of the inmate handbook or of the grievance procedure, either during his two orientations or as posted at Phillips. [Id. 16-22.] Although in signing the

10

checklists he certified he had seen the inmate handbook and grievance procedure he admitted his certification was not true. [Id. 18-19.]

Defendants argue that Plaintiff's deposition testimony reveals that he never filed an informal grievance, or, at a minimum, that "Plaintiff cannot show" that he did so. [Doc. 27 at 3-4.] Defendants also argue that, even if Plaintiff did file an informal grievance and there was no response to it, as he suggests in his November 23, 2004 letter, he still had his administrative remedies including the filing of a formal grievance -- but he failed to do so, or, at least, he has failed to offer any evidence that he did. [Id. 4.] Defendants argue that Plaintiff cannot claim ignorance of the grievance procedure as an excuse for failing to exhaust his administrative remedies because "he twice signed documentation confirming that he was made familiar with the grievance process and procedures." [Id.] They claim, "the grievance procedures [were] available in the library of the institution and [were] posted at the facility in the dining hall, dorms and program buildings," and Ms. Williams, his counselor, with whom he met at least twice a week, would have explained the procedures to him if he had asked her to do so. [Id. 4 & 3rd Williams Aff. ¶ 10.]

11

## IV. DISCUSSION

"N]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' This provision eliminates judicial discretion and mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citation omitted) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002), and Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)). There is no futility exception to this exhaustion requirement. See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998) (stating that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement" of the Prison Litigation Reform Act of 1995, and "there is no longer discretion to waive the exhaustion requirement").

12

It is undisputed that the Georgia Department of Corrections provides a

three-step administrative grievance process. Even if this Court accepts as true

Plaintiff's contention that he filed an informal grievance concerning the alleged

October 5, 2004 incident, it is apparent that he did not proceed to the next two

steps in the grievance process. In fact Plaintiff does not contend he ever filed a

formal grievance or appeal to the Office of the GDOC Commissioner. Instead,

Plaintiff cites Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000), to support his

claim that the remaining two steps in the grievance process were not "available"

to him, and, therefore, his filing the informal grievance exhausted the available

administrative remedies as required by § 1997e(a). [Doc. 16 at 10.] The reliance

on Brown is misplaced. Brown stands only for the proposition that a prisoner

need not exhaust his administrative remedies against those prison officials "whose

identities are unknown to him." 212 F.3d at 1208. Here, the issue is not whether

Plaintiff exhausted his administrative remedies with respect to prison officials

unknown to him who may have participated in the alleged incident on October 5,

2004. Rather, the issue is whether Plaintiff exhausted his administrative remedies

with respect to that alleged incident at all.

13

Plaintiff claims that he was "prevented" from filing a formal grievance by the failure of prison officials to respond to his informal grievance. [Doc. 16 at 11.] It is, however, undisputed that Plaintiff failed to engage the two other steps of the three-step GDOC grievance process, which he was allowed to pursue even if he had not received a response to his informal grievance, assuming one was filed. Plaintiff professes ignorance of the grievance procedures. Ignorance, however, is not a basis for concluding that the procedures were not "available," and certainly not in this case where the record is replete with evidence that the grievance process was explained to Plaintiff and that information about it was publicly posted and otherwise readily available.

Because Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," namely, exhaustion of the available administrative remedies, Defendants are entitled to summary judgment on Plaintiff's federal claims. See Celotex Corp., 477 U.S. at 322. In the absence of a viable federal claim, this Court declines to assert jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c) (stating that, if a "district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental

14

jurisdiction" over any remaining claims); 42 U.S.C. § 1983 (establishing a state

actor's potential liability only for a "deprivation of any rights, privileges, or

immunities secured by the Constitution and laws" of the United States).

## V. DEFENDANTS' MOTION FOR FEES AND SANCTIONS

Pursuant to Fed. R. Civ. P. 30 and 37, Defendants move for sanctions based

on Plaintiff's failure to appear for his scheduled deposition on November 3, 2005.

[Doc. 31 Supp. Br. at 1-3.] Defendants claim that, after the Court allowed for

limited discovery in this case, defense counsel contacted Plaintiff's counsel by

letter dated October 18, 2005, attempting to secure a mutually agreeable time for

Plaintiff's deposition. They assert that Plaintiff's lawyers did not respond and

thus Defendants served notice on October 24, 2005, that Plaintiff's deposition

was scheduled for 10:00 a.m. on November 3, 2005. [Id. 2 & Ex. 3 (Certificate of

Non-Appearance) 8-14).] When neither Plaintiff nor his counsel appeared, the

deposition was adjourned. Defendants claim that Plaintiff's counsel first

contacted defense counsel "[s]everal hours after the deposition was scheduled" to

inform them that Plaintiff could not be located. [Id. 2-3.] Plaintiff eventually was

deposed on November 14, 2005. [See Doc. 28.]

15

Defendants seek $113.00 in costs to pay for the court reporter for the

adjourned deposition and $2,300.00 in attorney's fees: (1) $1,600.00 for Ms.

Devon Orland, an Assistant Attorney General for the State of Georgia

representing Defendants Martin and Kennedy, for 8 hours of work at $200 per

hour -- 6.5 hours to prepare for and attend the adjourned deposition and 1.5 hours

to prepare the instant motion and her supporting affidavit; and (2) $700.00 for Mr.

Vincent A. Toreno, a private attorney representing Defendant Hatcher, for 5.6

hours of work at $125.00 per hour -- 2.5 hours to prepare for and attend the

adjourned deposition and 3.1 hours to prepare the instant motion and his

supporting affidavit.  [Id. 5-6 & Ex. 4 (Orland Aff.), Ex. 2 (Toreno Aff.).]

Plaintiff concedes that Defendants' counsel may be "correct in asserting

that no notice was given of Plaintiff's unavailability."  [Doc. 32 at 3.]  However,

Plaintiff objects to the attorney's fees requested by Defendants for the following

reasons: (1) because the November 3, 2005 deposition was scheduled in

Ms. Orland's office and was promptly adjourned when Plaintiff failed to appear;

(2) that Ms. Orland's preparation for the deposition was put to use just 11 days

later when she deposed Plaintiff and thus the time she actually "wasted" on the

adjourned deposition was closer to .5 hours than 6.5 hours; (3) the combined 4.6

16

hours of attorney time to prepare the instant motion is excessive; and (4) the billing rate of $200.00 per hour for Ms. Orland, a salaried state employee, is "problematic"; and (4) neither defense attorney has provided an independent affidavit regarding the reasonableness of their rates or the hours they allegedly expended, although "Plaintiff cannot, in good faith, take issue with [Mr. Toreno's] rate" of $125.00 per hour. [Id. 3-6.]

When a party has failed to attend his own deposition "after being served with a proper notice," a federal district court "shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure[,] unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d). A "district court has broad discretion" in imposing such monetary sanctions. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048 (11th Cir. 1994). A district court "may impose [these] sanctions without a showing of willfulness or bad faith on the part of the disobedient party." Id. at 1049. A district court is not merely to accept the movant's claimed expenses, but is to inquire into the basis for those expenses:

17

> The trial judge should weigh the hours claimed against his own
> knowledge, experience, and expertise of the time required to
> complete similar activities. If more than one attorney is involved, the
> possibility of duplication of effort along with the proper utilization of
> time should be scrutinized. The time of two or three lawyers in a
> courtroom or conference when one would do, may obviously be
> discounted. It is appropriate to distinguish between legal work, in
> the strict sense, and investigation, clerical work, compilation of facts
> and statistics and other work which can often be accomplished by
> non-lawyers but which a lawyer may do because he has no other help
> available. Such non-legal work may command a lesser rate. Its
> dollar value is not enhanced just because a lawyer does it.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-18 (5th Cir. 1974)

(also noting that "[t]he customary fee for similar work in the community should

be considered"). See also Loranger v. Stierheim, 10 F.3d 776, 781 & n.6 (11th

Cir. 1994) (citing with approval the Johnson "factors that district courts should

balance in fashioning fee awards" (although noting that the Johnson "balancing

test has since been displaced by the lodestar formula . . . [for use] in establishing a

reasonable hourly rate"), and stating that "[t]he party seeking attorney's fees bears

the burden of producing satisfactory evidence that the requested rate is in line

with prevailing market rates") (internal quotations omitted).

Plaintiff's objections to Defendants' fee requests are well-taken. As noted,

it appears that very little of Ms. Orland's time was actually "wasted" on the

18

adjourned deposition, which lasted less than 30 minutes and took place in her own offices. [See Doc. 31 Ex. 3 at 3-4.] Although Mr. Toreno has requested compensation for 2.5 hours of his time in connection with the adjourned deposition, the Court notes that he apparently also attended the second deposition, on November 14, 2005, and took no part in the proceedings. [See Doc. 28 (Pl.'s Dep.) at 2.] "The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." Johnson, 488 F.2d at 717. Because, as Defendants concede, the only issue to be explored during discovery was the extent to which Plaintiff had exhausted his administrative remedies [see Doc. 21], the value of Mr. Toreno's presence at the adjourned deposition, especially in light of his failure to participate in the subsequent deposition, should be severely discounted. In the exercise of its discretion, the Court declines to award attorney's fees incurred in the executing of the adjourned deposition, but does award the costs of the court reporter for the adjourned deposition -- $113.00. That Plaintiff appeared willing to pay the court reporter's cost, the court also declines to award attorney's fees to prepare the motion for sanctions.

19

AO 72A
(Rev.8/82)

## VI. CONCLUSION

For the foregoing reasons,

Defendants' twice-docketed request to file discovery [Docs. 28, 29] is

**GRANTED** nunc pro tunc; Plaintiff's motion for an extension of time to respond

to Defendants' motion for fees and sanctions [Doc. 33] is **GRANTED** nunc pro

tunc; Defendants' Joint Motion for Fees and Sanctions [Doc. 31] is **GRANTED**

in part and **DENIED** in part; and Plaintiff and/or Plaintiff's counsel of record are

**ORDERED** to pay $113.00 to Defendants for the costs of the court reporter for

the deposition that Plaintiff missed on November 3, 2005; and

Defendants' Motion for Summary Judgment [Doc. 22] is **GRANTED**, and

the instant complaint is hereby **DISMISSED WITHOUT PREJUDICE** for

Plaintiff's failure to exhaust his administrative remedies.

**IT IS SO ORDERED**, this 30th day of June, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

20

AO 72A
(Rev 8/82)